UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SKAGGS,

        Plaintiff,

v.

        Case Number 21-10250
        Honorable David M. Lawson

MOBILE CLIMATE CONTROL CORP.,

        Defendant.

_____/

## ORDER GRANTING IN PART JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT, AWARDING ATTORNEY'S FEE, AND DISMISSING CASE WITH PREJUDICE

This matter is before the Court on a joint motion by the parties to approve the terms of their settlement agreement. The plaintiff sued under the Fair Labor Standards Act (FLSA), alleging that the defendant failed to pay him the required overtime premium wage for hours worked in excess of 40 hours per week. The proposed settlement agreement provides for a payment of $16,500 that the parties agree will satisfy all of the plaintiff's overtime wage claims. However, from that amount the plaintiff's attorney proposes to extract 40% to satisfy a contingency fee agreement. The Court is obliged to determine if the fee requested is reasonable, and to that end the Court directed plaintiff's counsel to furnish additional information after the hearing on this motion held on May 6, 2021. A 40% fee, although reasonable is some cases, is excessive here. The Court is satisfied that the settlement is an appropriate resolution of this FLSA dispute and that an attorney's fee of 33% of the settlement amount is reasonable.

An employee's right to overtime premium wages under the FLSA is mandatory and is not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). An exception to that general rule exists when a *bona fide* dispute arises between the employee and employer, and that dispute is settled under court

supervision. *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982)). The Court's obligation in reviewing settlements of FLSA claims is to "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Group LLC*, No. 09-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000)).

The plaintiff filed his complaint on February 3, 2021, alleging that he regularly worked 60 to 70 hours per week, was misclassified as management, and was not paid an overtime premium. The Court scheduled a case management conference, which was put off and eventually canceled when the parties said they were nearing terms on a settlement. The deadline for the defendant to answer the complaint also was extended several times; however, the defendant never answered the complaint and no formal discovery was taken. On April 19, 2021, the parties filed their joint motion for approval of a proposed settlement. They assert that plaintiff's counsel evaluated the available information presented by his client that would have been used to support the claims at trial and calculated that at best the plaintiff was likely to recover around $9,200. The defendant insists that the plaintiff was not misclassified as an exempt employee, and the parties assert that resolution of their dispute about his eligibility for overtime wages would have been the centerpiece of the controversy presented for a jury to decide.

Plaintiff's counsel also requested approval of an attorney fee equal to 40% of the settlement proceeds, per the terms of a contingent fee agreement. However, the request for fees was unelaborated, and the entire argument in support consists only of citations two district court cases where counsel says that similar fee schedules were approved. The motion was not accompanied

by any billing records and no developed argument was put forth to establish the reasonableness of the fee on a percentage basis. In a supplemental declaration, plaintiff's counsel averred that he "billed 31.7 hours, at a blended hourly rate of $259.65 per hour," without any further elaboration.

The plaintiff (and not plaintiff's counsel, as argued) is entitled by the FLSA to recover "a reasonable attorney's fee" when suing for the wages that the Act guarantees him. 29 U.S.C. § 216(b). A "reasonable" fee is one that fairly compensates counsel measured by "'the amount of work done as well as for the results achieved.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "These two measures of the fairness of an attorney's award — work done and results achieved — can be in tension with each other." *Ibid.* The former is evaluated by the well-known lodestar method, which also is used as a reasonableness cross-check when addressing the latter via a percentage-of-the-settlement-fund assessment. *Ibid.*

A 40% contingency fee rate falls at the high end of the customary range, with a low-end statutory benchmark of 25% seen in Social Security disability cases. *See* 42 U.S.C. § 406(b). The high end is not warranted here. The work done in this case was minimal at best. From the information available, it does not appear that either party engaged in any formal discovery, and the motion brief suggests that the entire factual basis developed by plaintiff's counsel consisted of information supplied by the client. *See* Joint Mot. at PageID.43 ("Plaintiff and his counsel have specifically weighed the potential value of the claims based on records gathered from Plaintiff related to the alleged misclassification against the potential for receiving nothing at trial. From this, Plaintiff and his counsel have concluded that the proposed settlement provides a fair and reasonable resolution of the claims. Defendant supports this result because it eliminates the uncertainties, risks, and costs of further litigation and appeals, despite Defendant's denial of the

claims."). The case was pending for only a little over 10 weeks when the motion to approve the settlement was filed. It appears that plaintiff's counsel did little on-the-record work beyond drafting a seven-page pleading, having it served, and then filing several minor procedural motions to extend deadlines and excuse the requirement of designating local counsel. Neither the motion to approve the settlement nor the supplemental filings contain any further recitation of substantive work that was done, beyond the implication that some time was expended negotiating an informal resolution of the claims.

Certainly, there is virtue in counsel's exercise of restraint against investing extravagant labor in a lawsuit where the recovery, if any, is likely to be modest. The "just, speedy, and inexpensive resolution" of every case on terms that fairly meet its merits is, after all, a touchstone for all aspects of federal civil litigation. *See* Fed. R. Civ. P. 1. Modest goals appropriately motivate modest efforts, but also deserve modest rewards.

The requested contingent fee award of 40% is not beyond the boundaries of typical compensation for civil practice. *Benoskie v. Kerry Foods, Inc.*, No. 19-684, 2020 WL 5769488, at *3 (E.D. Wis. Sept. 28, 2020) ("'The Seventh Circuit has recognized that most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis and that the typical contingent fee is between 33 and 40 percent.'" (quoting *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)). However, as noted above, 40% is at the high end of the going rate for such service, and no circumstances evident from the record or the parties' limited filings suggest that a premium rate is justified here. Moreover, the two cases cited by plaintiff's counsel where 40% fees were approved involved FLSA collective actions with numerous wage claimants, and where extensive discovery and merits litigation occurred before the settlements were proposed. *Brittmon v. Upreach LLC*, No. 17-219, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) ("Following the

close of the opt-in period and additional discovery, the Parties participated in mediation and reached a settlement. The Parties jointly move for final approval of the collective action settlement."); *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 13-245, 2018 WL 1475610, at *1 (E.D. Tenn. Mar. 26, 2018) (adopting special master's recommendation for approval of $2.2 million settlement that included a contingent attorney fee along with service awards to one named plaintiff, ten opt-in plaintiffs, and an unspecified number of "opt-in deponents"). In this case, which involves an individual claim, there was no collective certification, no formal discovery, no mediation, and no substantive motion practice. The defendant did not even answer the complaint.

"'An award of attorney fees to a prevailing plaintiff under [29 U.S.C. § 216(b)] of the FLSA is mandatory, but the amount of the award is' within the judge's discretion, so long as it is reasonable." *Davis v. Omnicare, Inc.*, No. 18-142, 2021 WL 1214501, at *12 (E.D. Ky. Mar. 30, 2021) (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)). Federal courts, including this Court, have found that contingent fees of 33% or less were appropriate in FLSA overtime wage actions requiring far more substantial efforts by counsel than are evident in this case. *E.g.*, *Davis v. Omnicare, Inc.*, No. 18-142, 2021 WL 1214501, at *8 (E.D. Ky. Mar. 30, 2021) ("The case has been through the motion to dismiss stage, an initial collective certification stage, and was primed for dueling certification and decertification fights at the time of settlement. Seemingly, every inch of ground has involved combat, and the case result (as to employee status, as to Defendants' operative policies, as to proper calculative mechanics) was very unpredictable and unknowable when the mediation occurred. This is a bona fide dispute."); *id.* *12 ("As discussed above in the context of Rule 23(e)(2), the proposed award of one-third of the gross settlement fund is reasonable given the awards in prior similar actions, the complexity of this litigation, and the public interest in incentivizing attorneys to take on the risk of pursuing actions for alleged wage

- 5 -

violations. The same reasoning applies in the FLSA context."); *Benion v. LeCom Commc'ns, Inc.*, No. 15-14367, 2018 WL 7890861, at *1 (E.D. Mich. Dec. 7, 2018) ("The attorney's fee represents a percentage of the common fund of less than one-third and is substantially below the lodestar cross-check that the Court finds to be reasonable. However, as the Court observed at the hearing, there is nothing in the record that identifies by name the 43 opt-in plaintiffs and associates their individual share of the settlement proceeds.").

The one-third benchmark is fair compensation for the modest work that was done here, particularly when compared with the statutory rate of 25% of past-due benefits recovered that was established by Congress as a cap on reasonable fees for Social Security appeals. *See* 42 U.S.C. § 406(b). Those cases — like this — typically involve little or no formal discovery and are resolved by cross-motions decided on the papers. Here the case did not even proceed to substantive motion practice and apparently was resolved entirely informally. Again, that is not to say that counsel's approach to the case was inappropriate — economy in labor is to be commended where it is appropriate to conserve a likely modest recovery for the benefit of the client. However, if 25% is a reasonable ceiling for fees in a routine administrative appeal involving substantially more effort than was put forth here, then 33% is an appropriate rate to apply to the attorney's fees request here.

Moreover, the Sixth Circuit has warned a too rich fee may be a harbinger of a hasty and unfair compromise. Thus, there is good reason for the Court to be wary of approving a too high percentage-of-the-fund fee, even if the client does not object. As the court of appeals has explained, "if the [proposed] 'fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments [for the plaintiff] than could otherwise have [been] obtained.'" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (quoting *Staton v. Boeing Co.*, 327

F.3d 938, 964 (9th Cir.2003)). "Hence the 'courts must be particularly vigilant' for 'subtle signs that [] counsel have allowed pursuit of their own self-interests . . . to infect the negotiations.'" *Ibid.* (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). That concern stands out particularly in FLSA cases, where the rights to full payment of hourly and overtime wages secured by federal law are not subject to bargaining away, even with the employee's consent, and where, in order to approve the settlement, the Court must be sufficiently assured that the plaintiff has been made whole by receiving all wages that were due — at least, so far as reasonably can be estimated given the typically incomplete and uncertain accounting proofs that may be available in the mine run wage claim case.

In this case, there are no especially sharp signals that plaintiff's counsel gave up more ground that was warranted in light of the problems of proof that may have been faced and the inherent risks of continued litigation. However, the recovery here is objectively quite modest at least under the sparse facts put forth. The complaint says that the plaintiff regularly worked 60 to 70 hours per week over a period of three years and was not paid an overtime premium for hours worked in excess of 40 hours per week. In his supplemental filing, the plaintiff stated that he was paid $1,230.77 per week. That translates into an hourly rate of $30.77 ($1,230.77 ÷ 40) and an overtime premium of $15.38. If the plaintiff regularly worked 60 hours per week, the overtime premium for 20 weekly overtime hours would be $307.60 ($15.38 x 20). Depending on whether the two-year or three-year statute of limitations applies, and based on his concession that there are no records available precisely to establish the number of weeks during which the plaintiff worked overtime hours throughout the period of potential recovery, the plaintiff estimated that he could establish at trial damages ranging between $8,076.88 and $23,076.80. That range of damages evidently proceeds from the premise that, given the difficulties of proof at trial, the plaintiff could

not show conclusively that he is owed overtime wages for more than approximately 26 weeks over a two-year period, or 75 weeks over a three-year period. The net proceeds of the settlement as proposed would be 60% of $16,500, or $9,900, which somewhat exceeds the low end of the range for the plaintiff's damage estimates. Plaintiff's counsel represents that the $9,900 figure is a "win" for the plaintiff, based on his experienced assessment of what the case likely would be worth on its best day at trial.

From the limited information presented it does not appear that the recovery secured was in any sense extravagant or disproportionate to any known potential unpaid wage obligation. Thus, there is no reason to suppose that counsel has secured any special windfall for his client. Instead it appears that he successfully recovered, using appropriately modest efforts, a relatively modest deficiency in unpaid wages. That is a job well done, but the especially rich 40% fee structure suggests that there may be a slight moral hazard worth tempering in this case.

The settlement of $16,500 is an appropriate resolution of a bone fide dispute, and an attorney's fee 33% of the net proceeds is a reasonable fee for plaintiff's counsel.

Accordingly, for the reasons stated herein and on the record, it is **ORDERED** that the joint motion of the parties to approve the settlement agreement (ECF No. 16) is **GRANTED IN PART**, and the settlement is **APPROVED**.

It is further **ORDERED** that plaintiff's counsel may recover the costs of the action from the $16,500 settlement amount, plus an attorney's fee of 33% of the net balance. Plaintiff's counsel must remit the balance to the plaintiff.

- 9 -

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE** and without costs to either party.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   June 15, 2021